IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN J. KORESKO, V | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OFFICE OF DISCIPLINARY | : | |
| COUNSEL OF THE DISCIPLINARY | : | |
| BOARD OF THE SUPREME COURT | : | |
| OF PENNSYLVANIA BY PAUL | : | |
| KILLION, et al. | : | No. 14-1154 |

MEMORANDUM

McLaughlin, J.                                              March 23, 2015

John J. Koresko, V, brought this action against the Office of Disciplinary Counsel of the Disciplinary Board of the Supreme Court of Pennsylvania by Paul Killion, in his official capacity as Chief Disciplinary Counsel; the Disciplinary Board of the Supreme Court of Pennsylvania, by its members in their official capacities; the Pennsylvania Supreme Court Justices[1]; and Ramona Mariani, Disciplinary Counsel. Among other things, Mr. Koresko claims violations of his First, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Amendment rights under the Constitution. After some confusion regarding the defendants'

---

[1] The Court provided Mr. Koresko until August 1, 2014, to properly serve the justices -- in adherence to Rule 4(m) of the Federal Rules of Civil Procedure (Docket No. 17). Because Mr. Koresko failed to do so, the justices were dismissed (Docket No. 22). The present motion to dismiss before the Court was brought by the remaining defendants and any reference to defendants in this memorandum opinion does not refer to the justices.

need to respond to the Complaint,[2] the defendants filed a motion to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted (Docket No. 18).[3]

Although the Court finds that it may exercise jurisdiction over this matter,[4] the Court will dismiss this case

---

[2] Mr. Koresko informed Mr. Daley, counsel for the defendants, that he intended to file an Amended Complaint and that defendants need not respond to the Complaint until the revised Complaint was filed (see, e.g., Docket No. 14). Subsequently, Mr. Koresko failed to file an Amended Complaint and instead filed a request for default judgment against the defendants (Docket No. 13). The Court denied this request (Docket No. 17).

[3] The defendants argue that: (1) the Eleventh Amendment bars the official capacity claims; (2) Younger abstention precludes claims regarding any ongoing disciplinary case; (3) the Rooker-Feldman doctrine prevents this Court from disturbing the Pennsylvania court's order suspending Mr. Koresko; (4) Mr. Koresko lacks standing to challenge the Disciplinary Rules' disability provisions; (5) the Disciplinary Rules do not violate the Americans with Disabilities Act (the "ADA") or the Rehabilitation Act; (6) no ADA or Rehabilitation Act claim can exist in any case because none of the moving defendants were involved in denying Mr. Koresko's request; (7) the Complaint fails to state a cognizable due process claim; (8) the Complaint fails to state a cognizable First Amendment claim; (9) the Complaint fails to state cognizable Fifth, Sixth, Ninth, and Tenth Amendment claims; (10) Mariani has prosecutorial & quasi-judicial immunity; and (11) Mariani has immunity under 1 Pa. C.S.A. § 2310 from any state law claims.

[4] Among other defenses, the defendants contend that the Court has no jurisdiction to hear this case under the Rooker-Feldman doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). But application of the doctrine requires

with prejudice under the abstention doctrine announced in Younger v. Harris, 401 U.S. 37 (1971). See, e.g., Weekly v. Morrow, 204 F.3d 613, 614-15 (5th Cir. 2000) ("Federal courts do not abstain on Younger grounds because they lack jurisdiction; rather, Younger abstention 'reflects a court's prudential decision not to exercise [equity] jurisdiction which it in fact possesses.'").

I.  Facts[5]

   A.  Disciplinary Cases

   The facts of this case are fairly straightforward. The Office of Disciplinary Counsel, by Disciplinary Counsel

---

that the state court judgment be final before the district court case proceedings were commenced. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). That is not what happened here. At the time that Mr. Koresko filed his Complaint, an Emergency Temporary Suspension had been ordered but the suspension, by its name, was only temporary and a second case against Mr. Koresko, which underpinned his Complaint, was still pending. Rooker-Feldman, therefore, is not applicable here.

[5] Although the Court ultimately abstains from deciding this case, it views the facts presented in the context of a Rule 12(b)(1) and 12(b)(6) motion and "consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Miller v. Clinton Cnty., 544 F.3d 542, 550 (3d Cir. 2008) ("A 'court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs claims are based on the document.'").

Mariani, instituted two disciplinary actions against Mr. Koresko: 119 DB 2013 and 149 DB 2013.

The first disciplinary case, 119 DB 2013, was filed in August 2013 and "involves allegations arising out of ... litigation in Montgomery County, Pennsylvania" (Docket No. 11). After a hearing before the Hearing Committee, the Committee filed its report on September 18, 2014, suspending Mr. Koresko for a period of three-years, plus probation if reinstated.[6]

The second disciplinary case, 149 DB 2013, was commenced in October 2013 by the filing of a Petition for Emergency Temporary Suspension with the Pennsylvania Supreme Court. According to the defendants, this case involved Mr. Koresko's alleged misconduct while acting as a fiduciary (Docket No. 11). See also Solis v. Koresko, No. 09-998. The petition was reviewed by Gerald Lawrence, a board member of the Disciplinary Board and, on November 4, 2013, the Supreme Court issued a Rule to Show Cause, pursuant to Rule 208(f)(1) of the Pennsylvania Rules of Disciplinary Enforcement (Docket No. 18-1 (Ex. A), Pa. D.R.E. 208(f)(1))). The rule provided Mr. Koresko ten days to show cause why he should not be suspended, which Mr. Koresko complied with by filing, through counsel, a provisional response (requesting a 21-day extension of time for which to

---

[6] Generally, after a Hearing Committee files its report, it will go the full Disciplinary Board and then onto the Supreme Court for adjudication (Docket No. 18).

4

file) and then a definitive response (disputing the basis of the suspension) (Docket No. 18-4 (Ex. D), 5 (Ex. E)).  On December 19, 2013, the state Supreme Court made the rule "absolute" and placed Mr. Koresko on temporary suspension pursuant to Rule 208(f)(2) of the Pennsylvania Rules of Disciplinary Enforcement (Docket No. 18-6 (Ex. F); Pa. D.R.E. 208(f)(2)).  The order noted that the suspension "constitutes an imposition of public discipline within the meaning of Rule 402" of the Rules of Disciplinary Enforcement (Docket No. 18-6 (Ex. F); Pa. D.R.E. 402).

According to Pennsylvania's Rules of Disciplinary Enforcement, Mr. Koresko is provided two options from which to challenge his suspension (Docket No. 11).  He can petition the Supreme Court to dissolve or amend the order, pursuant to Rule 208(f)(4), or he can request an accelerated disposition of the charges, which would commence the formal disciplinary proceedings, pursuant to Rule 208(f)(6) (Docket No. 18).  In the former case, after an attorney petitions the state Supreme Court, standard constitutional practice allows him to file a writ of certiorari with the U.S. Supreme Court (Docket No. 11).  At this point, however, the record does not reflect that Mr. Koresko has pursued either option.

Rather, on January 16, 2014, Mr. Koresko filed an Emergency Petition for Extraordinary Relief with the

Pennsylvania Supreme Court, in which he raised various constitutional concerns (Docket Nos. 11, 18-7 (Ex. G)). The court denied the petition on February 7, 2014 (Docket No. 18-7 (Ex. G.)). This Court is unaware of any further actions Mr. Koresko has undertaken in challenging his suspension outside of initiating the present action in federal court.

    B.    <u>Opportunity for Continuances</u>

Both the Disciplinary Enforcement Rules and the Disciplinary Board Rules allow for continuances and postponements in cases of a respondent's disability. For example, Rule 301(e) of the Disciplinary Enforcement Rules permits an attorney who is suffering from a disability by reason of mental or physical infirmity or illness to request a stay from the Pennsylvania Supreme Court of his disciplinary proceedings (Docket No. 18). In such circumstances, the respondent is placed in inactive status pending the court's determination of his ability to effectively mount a defense, i.e., whether or not the respondent is incapacitated from practicing law (Docket No. 18). In addition, Rule 89.7 of the Disciplinary Board Rules permits a Hearing Committee to grant a continuance of up to 15 days, with the Board Chair given the authority to grant an even longer continuance.

In the 119 DB 2013 case, Mr. Koresko asked the Hearing Committee for a continuance of a hearing scheduled on January

23, 2014, until sometime after May 15, 2014 (Docket 1 ¶ 19; Docket No. 18).  Because the request was for more than 15 days, it went directly to the Board Chair.  The Chair denied the request on January 10, 2014 (Docket No. 18-9 (Ex. I)).

II.  Analysis

Younger abstention, as first articulated in Younger v. Harris, 401 U.S. 37 (1971), stands for the proposition that certain circumstances demand federal courts to decline to enjoin a pending state court criminal prosecution absent a showing that the charges were brought in bad faith or with an intent to harass.  See also ACRA Turf Club, LLC v. Zanzuccki, 748 F.3d 127, 132 (3d Cir. 2014).  Over the years since Younger's pronouncement, the Supreme Court has clarified that such abstention applies in "exceptional" cases, where "the prospect of undue deference with state proceedings counsels against federal relief."  Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013). "These 'exceptional' circumstances arise only where the federal action interferes with one of three categories of cases: (1) 'ongoing state criminal prosecutions' (as in Younger itself); (2) 'certain civil enforcement proceedings' ... ; and (3) 'civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions' (such as state court civil contempt

7

proceedings)." Zanzuccki, 748 F.3d at 136-37 (quoting Sprint, 134 S. Ct. at 588).

Importantly, prior to its decision in Sprint, the Supreme Court had found that state attorney disciplinary proceedings are exactly the type of proceedings envisioned by Younger since they affect "vital state interests" and "bear a close relationship to proceedings criminal in nature." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); see also Sprint, 134 S. Ct. at 587. In Middlesex, the Court promulgated a three-part test to determine whether a state proceeding meets Younger's requirement: (1) Do the proceedings in question "constitute an ongoing state judicial proceeding"; (2) "do the proceedings implicate important state interests"; and (3) "is there an adequate opportunity in the state proceedings to raise constitutional challenges"? Middlesex, 457 U.S. at 432.

Although most federal courts since Middlesex had interpreted this test to be the dispositive test for the application of Younger abstention, the Supreme Court clarified in Sprint that these questions were not absolute but instead were "additional factors appropriately considered by the federal court before invoking Younger." Sprint, 134 S. Ct. at 593 (emphasis in original). In other words, after a federal court determines that a particular state proceeding is indeed

"exceptional," the court must then decide, by applying the factors outlined in Middlesex, whether the state proceeding is sufficiently vigorous such that federal court abstention is appropriate.

Of the three considerations outlined in Middlesex, most courts, including this one, are primarily concerned with the third consideration: namely, whether the state proceeding provides an adequate opportunity to raise constitutional challenges.  In Middlesex, for example, where an attorney sought to enjoin a state disciplinary proceeding on the grounds that the proceedings violated his First Amendment rights, the Supreme Court found that the "unique relationship between the New Jersey Supreme Court and the local Ethics Committee" makes it "difficult to conclude that there was no 'adequate opportunity' for respondent [] to raise his constitutional claims." 457 U.S. at 435-36.

The Third Circuit has since confirmed that the operative question in considering whether there was "adequate opportunity" is "whether 'state law clearly bars the interposition of the constitutional claims.'" Gonzalez v. Waterfront Comm'n of New York Harbor, 755 F.3d 176, 184 (3d Cir. 2014) (emphasis in original) (quoting Moore v. Sims, 442 U.S. 415, 425-26 (1979)).  The burden is therefore "on the federal plaintiff to show that state procedural law barred presentation

9

of its claims." Lazaridis v. Wehmer, 591 F.3d 666, 670-71 (3d Cir. 2010). "Minimal respect for the state processes ... precludes any presumption that the state courts will not safeguard federal constitutional rights." Middlesex, 457 U.S. at 431 (emphasis in original).

Even if a court deems that abstention is appropriate given the "exceptional" circumstances of the state proceeding and the three Middlesex considerations, a federal court may still decide that adjudication of a case is appropriate if there is a showing of bad-faith or harassment on the part of the state prosecution. Younger, 401 U.S. 49; see also 32A Am. Jur. 2d Federal Courts § 1106. This exception to Younger is only appropriate, however, if the plaintiff can demonstrate bad-faith or harassment by specific evidence. Juidice v. Vail, 430 U.S. 327, 338 (1977); see also Phelps v. Hamilton, 122 F.3d 885, 890 (10th Cir. 1997); Grandco Corp. v. Rochford, 536 F.2d 197, 203 (7th Cir. 1976). Mere allegations of bad-faith are insufficient to overcome Younger's application.

The Court finds that the facts of this case fall squarely within the four corners of Middlesex such that abstention is appropriate. Like Middlesex, the facts here involve a state disciplinary proceeding in which "vital state interests" are involved and the proceedings "bear a close

relationship to proceedings criminal in nature." Middlesex, 457 U.S. at 432.

Nonetheless, Mr. Koresko raises two concerns,[7] the first implicitly, by virtue of the nature of his claims, and the second explicitly: that he was subjected to bad-faith and harassment on the part of the Disciplinary Board and that he has had no opportunity to air his constitutional concerns within the state process.  The Court takes each issue in turn.

With regard to the bad-faith exception espoused in Younger, Mr. Koresko has not pointed the Court to any evidence of harassment outside of the conclusory statements he made in his Complaint and in the on-the-record conference call he had with the Court and the defendants regarding his motion for a temporary restraining order.  In his Complaint, although Mr. Koresko did not explicitly employ this exception to Younger, he described his claim under 42 U.S.C. § 1983 as involving the "intentional harassment, coercion, [and] intimidation of the Plaintiff" and also sued under "intentional infliction of emotional distress" for the "extreme and outrageous conduct" of the Office of Disciplinary Counsel (Docket No. 1 ¶¶ 63, 84).  In the Court's telephone conference, Mr. Koresko similarly echoed

---

[7] During the Court's conference call with parties regarding Mr. Koresko's motion for a temporary restraining order, Mr. Koresko also disputed the application of Younger to his case (Docket Nos. 2, 11).  He did not, however, respond to defendants' motion to dismiss.

11

the Office's bad-faith by claiming that the disciplinary proceedings against him were "interesting[ly]" "time[d]" when he "had no money to defend" himself and were improperly coordinated with the U.S. Department of Labor (Docket No. 11). But Mr. Koresko has failed to follow-up with any evidence supporting these claims and indeed has even failed to respond to the defendants' motion to dismiss despite being offered additional time by the Court for which to do so (Docket No. 20).

The Supreme Court has a higher bar for proving bad-faith. For Mr. Koresko to invoke this exception to Younger, he must put forth specific evidence to support his allegations. Juidice, 430 U.S. at 338. In the over a year since this case was initiated, he has not. The exception is therefore inappropriate under these circumstances.

With regard to whether Mr. Koresko has had "adequate opportunity in the state proceedings to raise constitutional challenges," as required by Middlesex, 457 U.S. at 432, the Supreme Court has made clear that failure under this prong requires that the state law "clearly bar[] the interposition of the constitutional claims." Gonzalez, 755 F.3d at 184 (emphasis in original) (quoting Moore, 442 U.S. 425-26). The record before the Court does not support that finding. Here, not only are constitutional challenges not clearly barred in the state

process, but Mr. Koresko in fact brought constitutional challenges already to the Pennsylvania Supreme Court.

Pennsylvania's state disciplinary process regularly involves constitutional objections, which the state Supreme Court in turn adjudicates.  See, e.g., Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 54 (Pa. 2005) (constitutional right to confront witnesses); Office of Disciplinary Counsel v. Duffield, 644 A.2d 1186, 1188 (Pa. 1994) (constitutional right to due process); In re Oxman, 437 A.2d 1169, 1172 (Pa. 1981) (constitutional right to a speedy trial). Although the Pennsylvania Supreme Court denied Mr. Koresko's Emergency Petition for Extraordinary Relief, in which he made various constitutional challenges to his suspension, that denial is not tantamount to the state process barring constitutional claims.  Rather, the Pennsylvania Supreme Court affirmatively decided, for whatever reason, that Mr. Koresko's claims were not persuasive.  It is inappropriate for Mr. Koresko to conflate that denial with inadequate opportunity to make constitutional challenges.

Further, as required by Lazaridis, 591 F.3d at 670-71, Mr. Koresko has not identified any Pennsylvania law or rule that bars him from raising constitutional challenges in the state proceedings.  In fact, when pressed during the temporary restraining order telephone conference whether any specific rule

13

exists, Mr. Koresko was unable to identify any Disciplinary Board or Disciplinary Enforcement Rule which would bar his constitutional claims (Docket No. 11).  Given that, it would be "difficult to conclude that there was no 'adequate opportunity' for respondent [] to raise his constitutional claims," particularly because of the "unique relationship" between the Pennsylvania Disciplinary Board and the state Supreme Court. Middlesex, 457 U.S. at 435-36.  As the Supreme Court stated in Middlesex, "[m]inimal respect for the state processes ... precludes" this court from assuming that "state courts will not safeguard federal constitutional rights."  Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).  The Court therefore cannot say that there was no adequate opportunity for Mr. Koresko to air his constitutional concerns in the state proceeding.

IV. Conclusion

For the reasons explained above, the Court concludes that it must abstain from hearing Mr. Koresko's claims regarding his state disciplinary proceedings.  The Court will therefore dismiss the complaint with prejudice.

An appropriate order shall issue separately.